**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Rosa Albania Baez,<br><br>Plaintiff,<br><br>-v-<br><br>American Honda Motor Company, Inc., Andrew Malcolm, Tyanna Willis, Walmart Farmingdale Supercenter, and Walmart, Inc.,<br><br>Defendants. | 2:25-cv-5290<br>(NJC) (LGD) |

**MEMORANDUM & ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff Rosa Albania Baez brings this negligence and products liability action against American Honda Motor Company Inc. ("Honda"), Wal-Mart Stores East, LP, sued as Walmart Farmingdale Supercenter and Walmart, Inc. ("Walmart"), Andrew Malcolm, and Tyanna Willis (collectively, "Defendants") arising out of an accident in which her 2022 Honda CR-V Hybrid suddenly lost power while being driven and smoke and flames erupted from its hood (the "Accident"). (*See* Third Am. Compl., ECF No. 22.) Baez filed her initial Complaint in the New York Supreme Court, County of Suffolk ("Suffolk County Supreme Court") on July 16, 2025. (Ex. A, Not. of Removal, ("State Court Compl."), ECF No. 1-1 at 15–21.) On September 19, 2025, Honda removed this action, alleging that this Court has original jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the parties are completely diverse. (Not. of Removal ("NoR"), ECF No. 1-1 at 4.)

Before the Court is Baez's motion to remand this action (the "Remand Motion") to the Suffolk County Supreme Court on the basis that this court lacks subject matter jurisdiction

because the parties are not completely diverse, which was filed on February 2, 2026. (ECF No. 24.)

For the reasons set forth below, jurisdictional discovery in this action confirms that Baez is a citizen of New York, as are Malcolm and Willis. Because the parties are not completely diverse, this Court lacks jurisdiction under 28 U.S.C. § 1332(a). Accordingly, the Remand Motion is GRANTED.

## BACKGROUND

### I. Initial Domicile Allegations

Baez commenced this action in the Suffolk County Supreme Court on July 16, 2025, and initially named as Defendants Walmart, Honda, and two alleged "agents, servants, and/or employees" of Walmart named "Andrew M." and "Tyanna W." (*See* State Court Compl. ¶ 21.) The initial Complaint brought negligence claims against Andrew M. and Tyanna W. and alleged, upon information and belief, that they are New York residents. (*Id.* ¶ 2). Baez filed an amended complaint (the "Amended State Court Complaint") in the Suffolk County Supreme Court on August 22, 2025, naming the same defendants. (Ex. B, Not. of Removal ("Am. State Court Compl."), ECF No. 1-1 at 23–30.)

On September 19, 2025, Honda removed this action to federal court on the basis that complete diversity exists between the parties, alleging that Baez is a citizen of New York, that Honda is a citizen of California, and that Walmart is a citizen of Delaware and Arkansas. (NoR at 4.) In its Notice of Removal, Honda contends that the citizenship of Andrew M. and Tyanna W. has no bearing on whether the parties were completely diverse for purposes of removal because, at that time, they had only been identified by their first names, last initials, and job

positions, rendering them "fictitious defendants" whose citizenship is disregarded when determining whether complete diversity exists for removal purposes. (NoR ¶¶ 19–22 (citing *Green v. Doe*, No. 1:22-cv-435, 2023 WL 4074775, at *4 (E.D. Cal. June 20, 2023).) Accordingly, Honda's assertion that complete diversity existed between the parties at the time this action was commenced and at the time of removal was premised on the alleged citizenship of only Baez, Walmart, and Honda, respectively. (*See id* at ¶¶ 15–22.)

On September 26, 2025, Honda filed a letter seeking a conference concerning its anticipated motion to dismiss the Amended State Court Complaint. (ECF No. 7.) This Court waived the pre-motion conference requirement and issued a briefing schedule by which Honda was required file its motion to dismiss and Baez was required to either file an opposition to the motion or a second amended complaint. (Elec. Order, Sept. 29, 2025.) On October 17, 2025, Baez filed a Second Amended Complaint. (ECF No. 14.) Thereafter, on November 10, 2025, Honda sought a conference concerning its anticipated motion to dismiss the Second Amended Complaint (ECF No. 15), and Baez filed a response on November 11, 2025, seeking leave to amend the case caption to identify and properly name Defendants "Andrew M." and "Tyanna W." and to include factual allegations supporting their domicile. (ECF No. 18.) The Court granted Baez's request, and Baez filed a Third Amended Complaint, which includes such allegations, on January 20, 2026. (ECF No. 22.)

The Third Amended Complaint substituted Andrew Malcolm and Tyanna Willis for Defendants "Andrew M." and "Tyanna W." and alleges that these Defendants "are domiciled in the State of New York." (Third Am. Compl. ¶ 6.) It further alleges that "[t]his Court does not have jurisdiction over this action on any basis, including diversity jurisdiction, federal question

jurisdiction, or any other possible basis for this Court to exercise jurisdiction over this action." (*Id*. ¶ 9.) Indeed, based solely on the allegations in the Third Amended Complaint, Baez, Malcolm, and Willis are all domiciled in New York and are therefore citizens of the same state, which destroys the complete diversity between the parties required for jurisdiction under 28 U.S.C. § 1332(a). (*Id*. ¶¶ 4, 6, 9.)

**II. Motion to Remand and Challenge to Baez's Domicile**

On February 2, 2026, Baez moved to remand this action to the Suffolk County Supreme Court for lack of subject matter jurisdiction. (ECF No. 24.) In the Remand Motion, Baez represents that she "purchased her vehicle which is the subject of this action . . . from a Honda dealership in Orlando, Florida." (Mem. ISO Mot. Remand ("Mot."), ECF No. 26 at 1.) In support of the Remand Motion, Baez also filed, among other documents, a receipt from the Walmart Auto Care Center in Farmingdale, New York (the "Walmart Receipt"), which included some contact information for Baez, including a phone number and home address in Florida. (Ex. A, Decl. ISO Mot. to Remand, ECF No. 25-1.)

On February 4, 2026, Honda filed a letter seeking jurisdictional discovery into Baez's domicile in light of the Remand Motion's inclusion of the Walmart Receipt. (Ltr., ECF No. 27.) Honda indicated that Baez's filings prompted it "to further investigate [Baez]'s domicile." (*Id*. at 2.) Honda produced the following documents in support:

- a "Parcel Summary" document issued by the Volusia County Property Appraiser, which lists Baez as the owner of a single-family property in Debary, Florida (the "Florida Property") (Ex. A, ECF No. 27-1);
- a partial claim mortgage issued to Baez for the Florida Property, which lists the Florida Property as Baez's address (Ex. B, ECF No. 27-2);

- a 2025 Florida Profit Corporation Annual Report filed with the Florida Secretary of State on April 30, 2025, which lists Baez as the "VP" of Diana's B Cleaning Services Corp ("Diana B's Cleaning Services") and lists the address of the Florida Property as the current mailing address for the business (ECF No. 27-3);

- the Articles of Incorporation for Diana B's Cleaning Services filed with the Florida Secretary of State in 2018, which lists Baez as "VP" and provides a Florida address for its principal place of business and mailing address (ECF No. 27-4);

- a 2019 Florida Profit Corporation Annual Report filed with the Florida Secretary of State on March 29, 2019, which lists Baez as the "VP" of Diana B's Cleaning Services (ECF No. 27-5);

- cover sheets from Baez's medical records from Stony Brook Hospital, which provide a phone number for Baez with a "689" area-code corresponding to telephone numbers in Central Florida and list two addresses for Baez—one in Lindenhurst, New York (the "Lindenhurst Address") (ECF No. 27-6) and one in Wyandanch, New York (the "Wyandanch Address") (ECF No. 27-7);

- a Suffolk County Police Department Incident Report issued following the Accident, which provides Baez's Lindenhurst Address (ECF No. 27-8); and

- property record reports for both the Lindenhurst Address and the Wyandanch Address, neither of which list Baez as an owner of either property (ECF No. 27-9; ECF No. 27-19).

Honda asserted that the results of its limited investigation into Baez's domicile "casts serious doubt on whether [Baez] is a New York domiciliary for purposes of diversity jurisdiction," and requested "a period of limited jurisdictional discovery regarding [Baez]'s domicile." (ECF No. 27 at 3.) Honda also filed an opposition to the Remand Motion on February 16, 2026 (Mem. in Opp. Mot. to Remand ("Opp."), ECF No. 31), and Baez filed a reply on February 22, 2026 (Reply, ECF No. 32.)

On April 7, 2026, the Court granted Honda's request for limited jurisdictional discovery into Baez's domicile and a series of requests for extensions of time to complete that discovery, and ordered the filing of any supplemental briefing on the Remand Motion by July 3, 2026. (*See*

Elec. Order, April 7, 2026; ECF Nos. 35–39; Elec. Order, Jun. 8, 2026; Elec. Order, Jun. 9, 2026; Elec. Order Jun. 13, 2026). Baez filed a supplemental memorandum of law and a supplemental declaration in support of the Remand Motion on July 3, 2026. (*See* Supp. Mem. ISO Mot. to Remand ("Supp. Mot."), ECF No. 41; Aff/Decl. ISO Mot. ("Supp. Decl."), ECF No. 40.) Honda filed a supplemental memorandum of law and supporting exhibits opposing the Remand Motion on July 4, 2026. (Supp. Mem. in Opp. Mot. to Remand ("Supp. Opp."), ECF No. 42.) The Remand Motion is therefore fully briefed.

## LEGAL STANDARDS

### I. Removal Requirements

Removal of an action filed in state court to federal court is governed by 28 U.S.C. § 1441(a), which provides as follows:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). 28 U.S.C. § 1446 governs the procedure for removal and requires that a notice of removal "shall be filed within 30 days after the receipt by the defendant . . . of a copy of the initial pleading . . . containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1446(a)-(b)(1); *see also BP P.L.C. v. Mayor & City Council of Balt.*, 593 U.S. 230, 238 (2021) ("To remove a case, a defendant must comply with 28 U.S.C. § 1446."). It also provides that "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an

amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

## II. Motion to Remand

Removal jurisdiction must be "strictly construed." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002). Any doubts concerning the court's jurisdiction over the action should be resolved against removability "out of respect for the limited jurisdiction of the federal courts and the rights of states." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007); *see also In re World Trade Ctr. Disaster Site Litig.*, 270 F. Supp. 2d 357, 366 (S.D.N.Y. 2003) ("Removal statutes are to be construed narrowly and uncertainties are to be resolved in favor of remand, in order to promote the goals of federalism, the limited jurisdiction of federal courts, and the right of plaintiffs to choose the forum in which to bring suit."), *aff'd in part sub nom. In re WTC Disaster Site*, 414 F.3d 352 (2d Cir. 2005). "It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction," which must be proven by a "preponderance of evidence." *Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc.*, 943 F.3d 613, 617 (2d Cir. 2019); *see also Levy v. Suissa*, No. 16-cv-2532, 2021 WL 2402240, at *3 (E.D.N.Y. Mar. 19, 2021) ("Once challenged, the party invoking diversity jurisdiction must prove domicile by a preponderance of the evidence."), *report and recommendation adopted*, No. 16-cv-2532, 2021 WL 2401011 (E.D.N.Y. June 11, 2021).

A case removed from state court shall be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c); *see also Vera v. Saks & Co.*, 335 F.3d 109, 113 (2d Cir. 2003) (requiring remand in such circumstances). On a motion to remand a case, a district court is not bound by the facts alleged in

the complaint but may consider extrinsic materials, "such as documents attached to [the] notice of removal or [the] motion to remand that convey information essential to the . . . jurisdictional analysis." *Romero v. DHL Express (U.S.A), Inc.*, No. 15-cv-4844, 2016 WL 6584484, at *1 (S.D.N.Y. Nov. 7, 2016), *aff'd, sub nom. Romero v. DHL Express (USA), Inc.*, 719 F. App'x 80 (2d Cir. 2018).

**III. Diversity Jurisdiction**

This Court has an independent obligation to determine whether subject matter jurisdiction exists over this case. *See Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006). "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). If a district court lacks subject matter jurisdiction, it must dismiss the action. *See Doe v. McDonald*, 128 F.4th 379, 384 (2d Cir. 2025); Fed. R. Civ. P. 12(h)(3). "It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction," and district courts "may not assume subject-matter jurisdiction when the record does not contain the necessary prerequisites for its existence." *Platinum-Montaur Life Scis.*, 943 F.3d at 617–18 (2d Cir. 2019) (quotation marks omitted).

Diversity jurisdiction under 28 U.S.C. § 1332(a) requires complete diversity among the plaintiffs and defendants and that the amount in controversy exceeds $75,000. *See Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020). In determining the citizenship of a party, the following standards apply.

"An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile," or in other words, "the place where a person has his true fixed home and principal

establishment, and to which, whenever he is absent, he has the intention of returning." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019). Allegations of "residence alone [are] insufficient to establish domicile for jurisdictional purposes." *Id.* at 54; *accord RainMakers Partners LLC v. NewSpring Cap., LLC*, No. 23-cv-899, 2024 WL 1846321, at *2 n.1 (2d Cir. Apr. 29, 2024) (summary order) ("[A] complaint that alleges that the plaintiff and defendant are merely residents of different states has failed adequately to allege the existence of diversity jurisdiction."). In order to determine an individual's domicile, courts consider numerous factors, which include:

> current residence; voting registration; driver's license and automobile registration; location of brokerage and bank accounts; membership in fraternal organizations, churches, and other associations; places of employment or business; . . . payment of taxes; . . . whether a person owns or rents his place of residence; the nature of the residence (i.e., how permanent the living arrangement appears); . . . and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc.

*Lever v. Lyons*, No. 16-cv-5130, 2021 WL 302648, at *7 (E.D.N.Y. Jan. 28, 2021) (citations omitted); *see also Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*, 830 F. App'x 50, 51 (2d Cir. 2020) ("[T]he determination of domicile considers factors such as voting, taxes, property, bank accounts, places of business or employment.") (citation omitted). Accordingly, "[d]omicile is not synonymous with residence; a party can reside in one place and be domiciled in another." *Finnegan v. Long Island Power Auth.*, 409 F. Supp. 3d 91, 96 (E.D.N.Y. 2019).

A party's domicile is assessed as of the time the action was filed in state court and as of the time the action was removed to federal court. *United Food & Com. Workers Union, Local 919, AFL–CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) ("[W]here [the] basis of removal is diversity then diversity of citizenship must exist at [the] time [the] action was filed in state court as well as at [the] time of removal."); *see also Stewart v.*

*Singh*, 808 F. Supp. 3d 533, 540 (E.D.N.Y. 2025) ("Where removal is based on diversity jurisdiction, there must be complete diversity both at the time of removal and at the time the state court complaint was filed."). In assessing domicile, courts "should not rely on self-serving declarations in evaluating where a party was domiciled for the purposes of diversity jurisdiction." *Finnegan*, 409 F. Supp. 3d at 96.

**DISCUSSION**

Baez argues that the Court lacks subject matter jurisdiction over this action because the Third Amended Complaint does not bring any claims under federal law and the parties are not completely diverse. (Mot. at 6.) Baez's argument is premised on her alleged domicile in New York and the Third Amended Complaint's substitution of "Andrew M." for Andrew Malcolm, and "Tyanna W." for Tyanna Willis, both of whom are also alleged to be New York citizens based on domicile in New York. (*Id.*) According to Baez, in substituting Andrew Malcolm for "Andrew M." and Tyanna Willis for "Tyanna W.," the Third Amended Complaint corrected "misnomers" of existing defendants named in the original Complaint; it did not add *new* defendants. (*Id.* at 7–8.) As such, Baez argues that because she and Defendants Malcolm and Willis are all domiciled in New York, the parties are not completely diverse as required for diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

In opposition, Honda relies on documentary evidence to argue that the parties are completely diverse because Baez is domiciled in Florida, not New York. (Opp. at 5–10.) It argues in the alternative that, even if Baez is a New York citizen, Malcolm and Willis were improperly joined and should be dismissed from this action, which would leave the remaining parties—Baez, Walmart and Honda—completely diverse. (*Id.* at 10–18.)

After completing jurisdictional discovery into Baez's domicile, both Baez and Honda filed supplemental memoranda of law and exhibits. In her supplemental brief, Baez argues that Honda failed to carry its burden to establish federal jurisdiction over this action and that jurisdictional discovery confirms her New York citizenship based on her physical presence in the state and her intention to remain permanently here, as required for domicile. (Supp. Mot. at 3–9.) Alternatively, Baez argues that even if she is domiciled in Florida, this action should nonetheless be remanded to the Suffolk County Supreme Court because Honda's removal to federal court violates the forum-defendant rule. (*Id*. at 10–11.) In its supplemental memorandum of law, Honda argues that jurisdictional discovery establishes Baez's Florida citizenship and that Baez's testimony cannot overcome the documentary evidence that Honda produced, which confirms Baez's Florida citizenship. (*See* Supp. Opp.)

Accordingly, the Remand Motion turns on the question of Baez's citizenship and whether Willis and Malcolm were properly joined. If Baez is domiciled in Florida and therefore a citizen of that state, then the parties are completely diverse because Honda is a California citizen, Walmart is a citizen of Delaware and Arkansas, and Willis and Malcolm are New York citizens. However, if Baez is domiciled in New York and therefore a citizen of this state, and if Willis and Malcolm were properly joined in this action, then this case must be remanded for lack of subject matter jurisdiction.

As the party that removed this action to federal court, Honda has the burden of establishing by a preponderance of the evidence that this Court has subject matter jurisdiction. *See Platinum-Montaur Life Scis.*, 943 F.3d at 617–18; *see also Winter v. Novartis Pharm. Corp.*, 39 F. Supp. 3d 348, 350 (E.D.N.Y. 2014) ("In a case removed to federal court from state court,

the removal statute is to be interpreted narrowly, and the burden is on the removing party to show that subject matter jurisdiction exists and that removal was timely and proper.") (citing *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).

For the reasons explained below, Honda has not satisfied its burden to show by a preponderance of the evidence that Baez is a Florida citizen. The factual record supports a finding that on July 16, 2025, when this action was initiated, and on September 19, 2025, when it was removed to federal court, Baez was domiciled in New York. Furthermore, both Malcolm and Willis were properly joined in this action under Rule 20, Fed. R. Civ. P., and the balance of considerations weighs in favor of joinder. Because Malcolm and Willis are also domiciled in New York, the parties in this action are not completely diverse as required for jurisdiction under 28 U.S.C. § 1332(a), and there is no federal question presented in the Third Amended Complaint. Accordingly, this action is remanded to the Suffolk County Supreme Court for lack of subject matter jurisdiction.

## I. Factual Record

In evaluating Baez's domicile, this Court considered the entire record, including:

- a "Parcel Summary" document issued by the Volusia County Property Appraiser, which lists Baez as the owner of the Florida Property (ECF No. 27-1);
- a partial claim mortgage issued to Baez for the Florida Property, which lists the Florida Property as Baez's address (ECF No. 27-2);
- a 2025 Florida Profit Corporation Annual Report filed with the Florida Secretary of State on April 30, 2025, which lists Baez as the "VP" of Diana's B Cleaning Services and the Florida Property as the current mailing address for Diana B's Cleaning Services (ECF No. 27-3);
- the Articles of Incorporation for Diana B's Cleaning Services filed with the Florida Secretary of State in 2018, which identifies Baez as "VP" and lists a

principal place of business and mailing address in Florida (ECF No. 27-4);

- a 2019 Florida Profit Corporation Annual Report filed with the Florida Secretary of State on March 29, 2019, which lists Baez as the "VP" of Diana B's Cleaning Services (ECF No. 27-5);

- Cover sheets from Baez's medical records from Stony Brook Hospital, which provide for Baez a telephone number with an "689" area-code (ECF Nos. 27-6 and 27-7);

- a Stony Brook Hospital cover sheet that identifies the Lindenhurst Address as Baez's home address (ECF No. 27-6);

- a Stony Brook Hospital cover sheet that identifies the Wyandanch Address as Baez's home address (ECF No. 27-7);

- a Suffolk County Police Department Incident Report issued following the Accident, which identifies the Lindenhurst Address as Baez's address (Police Report, ECF No. 27-8);

- property record reports for the Lindenhurst and Wyandanch Addresses, neither of which list Baez as an owner of either property (ECF No. 27-9; ECF No. 27-9);

- a copy of Baez's New York State driver's license, which provides her address as the Lindenhurst Address (ECF No. 40-19);

- a New York State Department of Motor Vehicles Certificate of Title issued on January 31, 2022, which documents that Baez owns a 2022 Honda CR-V and resides at the Lindenhurst Address (ECF No. 40-20);

- a lease agreement for the Lindenhurst Address that begins on December 1, 2025, and identifies Baez as the tenant (ECF No. 40-21);

- a 2025 Mortgage Interest Statement issued by Lakeview Loan Servicing, LLC, detailing a mortgage that Baez took out on the Florida Property (ECF No. 40-22);

- a Duke Energy utility bill for the Florida Property issued to Baez, which covers the June 18, 2024 through April 20, 2026 period. (ECF No. 40-23);

- Bank of America bank statements detailing Baez's transactions between November 2025 through April 14, 2026 (Bank of America Statement, ECF No. 40-24);

- Flagstar bank statements detailing Baez's transactions between November 30, 2024 through May 31, 2026 (Flagstar Bank Statement, ECF No. 40-25);
- Form 1099 tax documents issued to Baez from Amazon for the 2023 tax year, which lists her address as the Lindenhurst Address, and Lyft for the 2024 tax year, which lists her address at the Florida Property (ECF No. 40-26);
- a temporary New York State Insurance Identification Card issued to Baez on October 1, 2024, detailing insurance coverage for her 2022 Honda CR-V and listing her address as the Lindenhurst Address (ECF No. 40-27);
- a home insurance policy listing Baez as the named insured for the Florida Property, which was in effect between October 21, 2024, and October 21, 2025 (ECF No. 40-28);
- a Form 1040 federal tax return document for the 2020 tax year, listing Baez's address at the Lindenhurst Address (ECF No. 40-29);
- a Form 1040 federal tax return document for the 2022 tax year, listing Baez's address at the Florida Property (ECF No. 40-30);
- a Form 1040 federal tax return document for the 2023 tax year, listing Baez's address at the Florida Property (ECF No. 40-31);
- a Form 1040 federal tax return document for the 2024 tax year, listing Baez's address at the Florida Property (ECF No. 40-32);
- a Form 1040 federal tax return document for the 2025 tax year, listing Baez's address at the Florida Property (ECF No. 40-33);
- the transcript of the Baez deposition held on June 4, 2026 (ECF No. 42-2); and
- Honda's interrogatories to Baez as to jurisdictional discovery and Baez's responses (ECF No. 42-6).

## II. Baez's Domicile

As explained above, an individual's citizenship is determined by domicile, which is "the place where a person has [a] true fixed home and principal establishment, and to which, whenever [she] is absent, [she] has the intention of returning." *Van Buskirk*, 935 F.3d at 53.

"Where there is evidence indicating that a party has more than one residence, or the residence is unclear, the Court should look to the party's intent" in order to ascertain the individual's domicile. *Chen v. Sun*, No. 1:13-cv-280, 2016 WL 270869, at *2 (S.D.N.Y. Jan. 21, 2016). Factors relevant to the Court's inquiry into an individual's domicile include current residence and the nature of residence in a state, the state of one's driver's license and vehicle registration, location of bank accounts, and payment of taxes, among other factors. *See Lever*, 2021 WL 302648, at *7. No single factor predominates, and the Court considers the totality of the circumstances and evidence in the record. *Chen*, 2016 WL 270869, at *2.

Here, record evidence illustrates that Baez is associated with more than one residence—one in Florida and others in New York. However, Baez's driver's license, automobile insurance, automobile title, and bank statements establish that, at the time this litigation was filed in July 2025 and when it was removed to federal court in September 2025, Baez was domiciled in New York.

**a. Residence**

It is undisputed that Baez owns a home in Florida. A "Parcel Summary" document issued by the Volusia County Property Appraiser lists Baez as the owner of a single-family home in Debary, Florida. (*See* ECF No. 27-1.) Baez is also listed as the insured on a home insurance policy issued by Florida Peninsula Insurance Company, which insured the Florida Property from October 21, 2024 through October 21, 2025, thereby encompassing both the date on which this litigation was filed in the Suffolk County Supreme Court on July 16, 2025, and when Honda removed the action to federal court on September 19, 2025. (*See* ECF No. 42-4.) In addition, Duke Energy utility bills were issued in Baez's name and addressed to the Florida Property for

services from May 17, 2024, through April 16, 2026. (ECF No. 40-23.) Baez undertook a partial claim mortgage on the Florida Property on January 10, 2025. (ECF No. 27-2.) She also continues to make payments on the Florida Property mortgage. (ECF No. 42-5 (mortgage interest statement for 2025).)

Baez does not currently reside in the Florida Property and was not living there in 2025 when this litigation was filed and later removed to this Court. (Resp. to Interrogatories ("Honda ROG Resp."), ECF No. 42-6 at 11, ¶ 2.) However, Baez's son resides in the Florida Property. (Ex. A ("Baez Dep."), ECF No. 42-2 at 144:6–16.) Furthermore, the Florida Property is listed as Baez's address on a variety of documents, including (1) a 2024 Form 1099-K issued by Lyft, Inc. (ECF No. 40-26 at 3); (2) federal tax returns for the years 2022, 2023, 2024, and 2025 (*see* ECF Nos. 40-30–33); (3) a September 23, 2024 receipt from Walmart Auto Care Center in Farmingdale, New York (ECF No. 25-1); (4) and a 2025 Florida Profit Corporation Annual Report, which was filed with the Florida Secretary of State on April 30, 2025 (ECF No. 27-3).[1] With respect to the corporate documents, Baez explained that she is listed as a "VP" for her sister's business in Florida—Diana B's Cleaning Services—but that she has never drawn an income from that business. (Baez Dep. at 70:16–24; *id*. at 76:25–77:6.)

However, notwithstanding these records showing Baez's Florida residence and activities, Baez represents that she moved to New York in or around June 2024. (Honda ROG Resp. at 11, ¶ 2; Baez Dep. at 67:17–25.) Baez testified that she has no intention of returning to Florida on a

---

[1] The Articles of Incorporation for Diana B's Cleaning Services (ECF No. 27-4) and a 2019 Florida Profit Corporation Annual Report (ECF No. 27-5) also state that Baez resides in Florida, although at an address different from the Florida Property.

permanent basis and plans to remain in New York. (Baez Dep. 164:20–165:4.) Indeed, a number of documents in the factual record from 2024 onwards provide New York addresses for Baez's residence, thereby corroborating her testimony. These include:

- Baez's New York driver's license, which was issued in 2023 (two years before the Accident) and does not expire until 2031 (ECF No. 40-19);
- Bank of America bank statements, which provide the Lindenhurst Address for Baez (ECF No. 40-24);
- Flagstar bank statements, which provide a Bay Shore, New York address for Baez (ECF No. 40-25);
- the January 5, 2025 Police Report from the Accident, which provides the Lindenhurst Address for Baez;
- a Temporary New York State Insurance Identification Card issued to Baez on October 1, 2024, which lists the Lindenhurst Address (ECF No. 4-27);
- a hospital record dated July 30, 2025 from Stony Brook Hospital, which provides the Lindenhurst Address for Baez (ECF No. 27-6);
- a hospital record dated September 9, 2025 from Stony Brook Hospital, which provides the Wyandanch Address for Baez (ECF No. 27-7).

The record thus reveals that Baez maintains significant connections and two residences in two different states, Florida and New York. As a result, the Court must focus on Baez's intent and examine the entire course of her conduct to determine her domicile. *See Chen*, 2016 WL 270869 at *2; *Borderud v. Riverside Motorcars, LLC*, No. 3:18-cv-1291, 2020 WL 2494760, at *5 (D. Conn. May 13, 2020) (requiring "focus" on parties' intent and the "totality of the evidence" to determine domicile).

**b. Other Factors Show Baez is Domiciled in New York**

A careful review of the entire factual record leads to the conclusion that Baez was domiciled in New York when she initiated this action and when Honda removed it to federal court. *See United Food & Com. Workers Union, Local 919, AFL–CIO*, 30 F.3d at 301–02 (finding that a party's domicile is assessed as of the time the action was filed in state court *and* as of the time the action was removed to federal court). Although it is clear that Baez has resided in Florida and New York at different times in the past, the balance of the evidence weighs in favor of concluding that she was a New York domiciliary, and therefore a New York citizen during the operative period from July to September 2025 for two overarching reasons.

First, the record demonstrates that Baez intended to make New York her permanent home when she (1) obtained a Certificate of Title for her vehicle from the New York Department of Motor Vehicles on January 31, 2022 (ECF No. 40-20); (2) obtained a New York State driver's license in 2023, which is valid through 2031 (ECF No. 40-19), and (3) secured automobile insurance for her vehicle in the state of New York, beginning on October 1, 2024 (ECF No. 40-27). Notwithstanding the fact that Baez actually purchased the vehicle in Florida, each of the aforementioned actions show that Baez intended to use the vehicle in New York and that her New York residence was not meant to be temporary or periodic, but lasting. "Among the influential factors [for determining domicile] are the place where . . . real and personal property (such as furniture and *automobiles*) [are] located, [and where] driver's and other licenses [are] obtained . . . ." *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991) (emphasis added); *see also New Canaan Cap. Mgmt., LLC v. Ozado Partners LLC*, No. 16-cv-1395, 2017 WL 1157153, at *7 (S.D.N.Y. Mar. 25, 2017) (finding Florida domicile where the

parties "both hold Florida drivers' licenses and own four cars, all of which are registered and insured in Florida").

The record suggests that, at one point, Baez had a Florida driver's license. A notary represents that Baez produced a "FL License" on January 10, 2025, when Baez's partial claim mortgage on the Florida Property was notarized in the state of Florida. (ECF No. 27-2.) Nevertheless, the record does not contain any active Florida driver's license for Baez, and her New York driver's license is valid until 2031. Moreover, Baez testified that she had a Florida license until 2019 but has only had a New York driver's license since then. (Baez Dep. at 59:12–63:16.)

Second, Baez's bank statements from the months before and after the initiation of this litigation and its removal to this Court also illustrate that she mostly transacted business and was present in New York. Baez's Flagstar bank statements detail transactions from November 30, 2024 through May 31, 2026. (*See* Flagstar Bank Statement.) Between November 30, 2024 and October 31, 2025—which spans the time period following the initiation of this action in July 2025 and its removal to federal court on September 19, 2025—Baez engaged in at least 88 transactions with New York merchants. (*Id.*) The brief descriptions of these transactions in the bank statements indicate that Baez was purchasing food, daily necessities, and goods from retail, grocery, and convenience stores as well as restaurants in New York during these months. For example, the Flagstar bank records from November 30, 2024 through October 31, 2025 document:

- purchases at Staples in Farmingdale, New York, and Discount City in Deer Park, New York (*id.* at 20);

- a purchase at Home Depot in Farmingdale, New York (*id*. at 41);
- purchases at Stop & Shop in Farmingdale, New York (*id*. at 20);
- a purchase at Target in Bay Shore, New York (*id*. at 24);
- purchases at 7-Eleven in Bay Shore, New York (*id*. at 46);
- a purchase at Sunrise Mart in Lindenhurst, New York (*id*.);
- a purchase at Target in Central Islip, New York (*id*. at 47);
- a purchase at Chipotle in Farmingdale, New York (*id*. at 48); and
- a purchase at Pet Supplies Plus in Central Islip, New York (*id*.).

By contrast, Baez's Flagstar and Bank of America statements document far fewer Florida transactions, which are concentrated during shorter time periods. The Flagstar bank statements document only five purchases in Florida between March 31, 2025 and April 7, 2025. (*Id*. at 21–23.) Both the Flagstar and Bank of America bank statements document additional Florida-based purchases beginning on November 17, 2025, which is *after* the action was removed to this Court in September 2025. (*See* Flagstar Bank Statement at 59; Bank of America Statement, ECF No. 40-24 at 3.) However, the Florida-based transactions stop on January 15, 2026, across both bank accounts. (*See id*. at 13; Flagstar Bank Statement at 71 (documenting a final Florida-based purchase on January 13, 2026).) Between November 17, 2025 and January 15, 2026, the statements from both banks document a total of 30 transactions in Florida and at least 22 transactions in New York. (*See* Flagstar Bank Statement at 59–71 (17 Florida transactions and 16 New York transactions); Bank of America Statement at 3–13 (13 Florida transactions and 6 New York transactions).) Furthermore, after January 15, 2026, Baez conducted an additional 39

transactions in New York, and no additional transactions in Florida. (Flagstar Bank Statement at 72–90 (17 transactions); Bank of America Statement at 13–32 (22 transactions).)

Based on Baez's history of purchases from retail, grocery, and convenience stores and fast food restaurants from July 2025 through September 2025, as well as before and after this period, Baez has primarily been living in New York with brief interludes in Florida. Furthermore, both bank statements are addressed to Baez at New York residences, and the Flagstar ank statements identify the bank's own location in Hicksville, New York. (*See* Flagstar Bank Statement; Bank of America Statement.)

Viewing all of the evidence in the record as a whole, at the time this action was filed in July 2025 and when it was removed to this Court in September 2025, New York was the place where Baez had her "true fixed home and principal establishment," and to which, whenever she was absent, she had "the intention of returning." *Van Buskirk*, 935 F.3d at 53. The record shows that Baez previously resided in Florida, where she owns property, but that she moved to New York in around June of 2024, secured a certificate of title for her car there, and obtained a New York driver's license and auto insurance, thereby showing her intent to make New York her fixed home. In addition, she was residing in New York when she filed this action and when it was removed to this Court as shown by the bank records detailing her day-to-day retail transactions related to activities of daily living. Finally, Baez has also testified that she earns income by driving for Lyft and Amazon in New York.[2] Baez Dep. at 67:6–11; *see Dukes v. New York City Employees' Ret. Sys.*, 361 F. Supp. 3d 358, 368 (S.D.N.Y. 2019) (finding that plaintiff

[2] Baez's Form 1099 tax documents issued by Lyft for the 2024 tax year list her address at the Florida Property. (ECF No. 40-26.) Nevertheless, Baez testified that when she moved back to New York in 2024, she drove for Lyft, among other companies. (Baez Dep. at 67:6–11.)

was domiciled in Pennsylvania when the litigation was filed where "the plaintiff held a Pennsylvania driver's license and her Pennsylvania address was listed on her bank statements" despite her part-time residence and limited transactions in New York).

Honda's reliance on Baez's ownership of property in Florida, her use of that address in federal tax filings from 2022–2025 and other documents, her purchase of her vehicle in Florida, and her inclusion as a corporate leader of her sister's Florida business are unavailing. There is no dispute that Baez resided in Florida in the past, that her adult son lives in the Florida Property, and that she is a part-time resident of the state, as shown by her bank records. However, a preponderance of the evidence shows that Baez was a New York domiciliary in July 2025 when she filed this action and in September 2025 when Honda removed it to this Court.

## III. Joinder of Willis and Malcolm

Honda argues that this Court should refuse to remand this action pursuant to 28 U.S.C. § 1447(e) ("Section 1447(e)") on the basis that Baez only joined Willis and Malcolm, who are also New York citizens, in order to destroy diversity jurisdiction. (Opp. at 12.) Baez contends that she appropriately joined Willis and Malcolm to this action and that 28 U.S.C. § 1447(c) ("Section 1447(c)") mandates remand to the Suffolk County Supreme Court. (Mot. at 6; Reply at 6.) Because Willis and Malcolm were properly joined, the parties to this action are not completely diverse as required for jurisdiction under 28 U.S.C. §1332(a).

Section 1447(c) provides that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). However, Section 1447(e) grants a federal court the authority to deny joinder of additional parties in certain circumstances: "If after removal the plaintiff seeks to join additional defendants

whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). The decision to permit the joinder of additional parties is "within the sound discretion" of the court. *2386 Hempstead, Inc. v. WFG Nat'l Title Ins. Co.*, No. 22-cv-9944, 2023 WL 2822553, *4 (S.D.N.Y. Apr. 7, 2023). "In deciding whether to permit such joinder, courts in this District engage in a two-part analysis." *Id.*

First, the court must "consider whether joinder would be appropriate under the Federal Rules and then proceed to weigh the competing interests in efficient adjudication and the need to protect diversity jurisdiction from manipulation." *Corona Grp., LLC v. Park*, No. 1:21-cv-2889, 2022 WL 16838191, at *2 (S.D.N.Y. Nov. 9, 2022) (brackets omitted). Specifically, "joinder . . . must satisfy Federal Rule of Civil Procedure 20, which governs permissive joinder of parties." *2386 Hempstead, Inc.*, 2023 WL 2822553, *4. Under Rule 20(a)(2), "[p]ersons . . . may be joined in one action as defendants if (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "In assessing whether the requirements of Rule 20(a)(2) are met, courts must accept the factual allegations in a plaintiff's complaint as true." *McGrath v. Indus. Waste Techs.*, No. 20-cv-2858, 2021 WL 791537, at *5 (S.D.N.Y. Feb. 26, 2021).

Second, "if the party seeking joinder satisfies Rule 20, the Court must next determine whether the balance of considerations weighs in favor of joinder." *Hercules Pharms., Inc. v. AmerisourceBergen Corp.*, No. 23-cv-2876, 2023 WL 4975978, at *2 (E.D.N.Y. Aug. 3, 2023).

In making this determination, the Court may consider "(i) any delay and the reason for delay; (ii) prejudice to the defendant; (iii) the likelihood of multiple litigation; and (iv) the plaintiff's motivation in seeking joinder." *Id.*; *see also Vanderzalm v. Sechrist Indus., Inc.*, 875 F. Supp. 2d 179, 183 (E.D.N.Y. 2012) ("If the Court finds that joinder is permissible, the Court then turns to the second step, which requires the Court to conduct a fundamental fairness analysis in order to ascertain whether the balancing of certain relevant considerations weighs in favor of joinder and its necessarily attendant remand.").

Honda does not dispute that joining Malcolm and Willis is appropriate under Rule 20, Fed. R. Civ. P. (*See* Opp. 13.) Rather, it argues that Baez named these Defendants in the Third Amended Complaint in order to destroy diversity jurisdiction. (*See id.* at 12.) Accordingly, the Court proceeds to consider each of the four factors involved in the second prong of the joinder analysis to determine the whether the balance of considerations weigh in favor of joinder.

**a. Delay**

Baez did not delay in seeking leave to amend the complaint to add Malcolm and Willis to this litigation. "Delay in seeking amendment is measured from the date of removal." *Isaly v. Bos. Globe Media Partners, LLC*, 650 F. Supp. 3d 106, 114 (S.D.N.Y. 2023), *aff'd*, No. 23-67-cv, 2023 WL 6439901 (2d Cir. Oct. 3, 2023). Baez named "Andrew M." and "Tyanna W." in the initial Complaint in the Suffolk County Supreme Court. (*See* State Court Compl.) She first raised the issue of amending the Complaint to name Malcolm and Willis in lieu of "Andrew M." and "Tyanna W." pending Walmart's response to her interrogatory requests, on October 1, 2025—just twelve days after this case was removed to federal court on September 19, 2025. (ECF No. 9.) Indeed, at the time, Baez represented that she was awaiting interrogatory responses from

Walmart, which would provide further details on Malcolm and Willis, after which she would "file a motion to amend the case caption to include the full last names of these defendants, and to remand this case to New York State Supreme Court." (*Id.*) Baez included the full names of both Malcolm and Willis in the body of the Second Amended Complaint, which was filed just a few weeks later on October 17, 2025. (ECF No. 14.) Around one month later, on November 17, 2025, Baez sought leave of Court to file a Third Amended Complaint pursuant to Rule 15(a)(2), Fed. R. Civ. P., to amend the case caption and add Malcolm and Willis as defendants. (ECF No. 18.)[3] The Court ruled on that motion on January 12, 2026, and ordered Baez to file any third amended complaint by January 26, 2026. (Elec. Order, Jan. 12, 2026.). The Third Amended Complaint naming Malcolm and Willis as Defendants was timely filed on January 20, 2026 (ECF No. 22).

Based on this procedural history, Baez raised the issue of naming Malcolm and Willis as Defendants twelve days after this case was removed to federal court, sought additional information about them through discovery from Walmart, and timely sought leave to file the Third Amended Complaint, and then filed that pleading, which named Malcom and Willis as Defendants, in accordance with this Court's deadlines. As such, there is no indication that Baez delayed amending the pleadings to name Malcolm and Willis as defendants. *See Isaly*, 650 F.

[3] The operative complaint is docketed as the "Third Amended Complaint," but the Court notes that Baez did not file a "Second Amended Complaint." Rather, in the Suffolk County Court, Baez filed an initial complaint and a subsequent amended complaint. (*See* ECF No. 1-1.) When this case was moved to federal court, Baez filed an Amended Complaint on October 17, 2025 (ECF No. 14), as described above, and then a "Third Amended Complaint" on January 20, 2026 (ECF No. 22). Despite the lack of a "Second Amended Complaint," the Court refers to the operative complaint as the "Third Amended Complaint" because that is how it appears on the docket.

Supp. 3d at 114 (finding that the plaintiff did not delay in amending the complaint where "Plaintiff informed the Court of his intention to seek remand less than two weeks after Defendant removed the case to federal court and also filed the amended complaint and motion for remand within six weeks of removal"); *M.S.S. Const. Corp. v. Century Sur. Co.*, No. 15-cv-2801, 2015 WL 6516861, *7 (S.D.N.Y. Oct. 28, 2015) (finding the plaintiff's three month delay in filing an amended complaint reasonable where the amended complaint was filed within court-ordered deadlines).

**b. Prejudice**

Remanding this action, which is still in its early stages, would not prejudice Honda. With the exception of jurisdictional discovery into Baez's domicile, the parties have not reached an advanced stage in discovery, which is currently stayed pending resolution of the Remand Motion. (ECF No. 43; Elec. Order, Aug. 6, 2026.) Furthermore, there are no pending dispositive motions before the Court. While Honda has filed letters requesting a conference in anticipation of filing a motion to dismiss (ECF Nos. 7, 15), the Court has not held a conference or scheduled briefing on the motion, and no motion to dismiss has been briefed. These factors weigh in favor of remanding the action. *See Aparicio v. Uber Techs., Inc.*, No. 22-cv-4244, 2023 WL 5287065, at *4 (E.D.N.Y. Aug. 16, 2023) (finding prejudice to defendant "minimal" where "the case is still in its early stages," "discovery is ongoing," and there is no pending motion to dismiss); *Hercules Pharms., Inc.*, 2023 WL 4975978, at *2 (finding no prejudice where the proceeding has

not "significantly advanced such that . . . joinder would deprive [the parties] of available strategic options").[4]

Honda argues that it would be prejudiced if this case were remanded to the Suffolk County Supreme Court because it would have "at most, two months to complete discovery in state court." (Opp. at 16.) But this assertion is unsupported, and Honda does not explain why the parties would only be granted a short window of time to complete discovery. Accordingly, Honda has not shown that the parties would be significantly prejudiced if this action were to be remanded to the Suffolk County Supreme Court.

**c. Multiple Litigation**

Denying Baez's joinder of Malcolm and Willis runs the risk of creating multiple streams of litigation because the claims against Walmart, Malcolm, and Willis arise out of the same factual predicate—the allegedly negligent repair services that Malcolm and Willis provided Baez when they served her Honda CR-V at Walmart's Auto Care Center. (*See* Third. Am. Compl. ¶¶ 71–89.) *See Aparicio*, 2023 WL 5287065, at *5 (finding that denying plaintiff's joinder of additional defendants "will create multiple litigations" if federal litigation proceeds against one set of defendants and state court litigation proceeds against another). Accordingly, this factor, too, weighs in favor of joinder.

[4] *Cf. Isaly*, 650 F. Supp. 3d at 115 (finding that a remand would prejudice the parties because a dispositive motion was fully briefed, pending, and may need to be re-briefed because remand would delay resolution with additional "motion practice regarding the consolidation of the state court cases and by the stay currently applicable to the state case if the actions were consolidated").

**d. Improper Motives**

Last, there is no evidence that Baez is only motivated to join Malcolm and Willis in this action to destroy diversity jurisdiction. In fact, Baez has consistently sought to name Malcolm and Willis in this lawsuit since its inception. In the original Complaint filed in the Suffolk County Supreme Court, she named "Andrew M." and "Tyanna W." as alleged "agents, servants, and/or employees" of Walmart and alleged that they engaged in negligent conduct that caused Baez harm. (*See* NoR at 13; State Court Compl. ¶ 21.) Furthermore, before this Court, Baez promptly requested information from Walmart about Malcolm and Willis through interrogatories as early as September 23, 2025—just four days after this case was removed—in order to properly name them as defendants in an amended pleading and to serve them in this action. (ECF No. 9 at 2.) Baez also promptly notified this Court, Walmart, and Honda of her intent to amend the pleadings to name Malcolm and Willis as Defendants in this action. (*Id.*) Accordingly, the procedural history does not show that Baez has any improper motive in seeking to join Malcolm and Willis to this action. *Aparicio*, 2023 WL 5287065, at *6–7 (finding that the record does not demonstrate plaintiff had any improper motives in joining defendant when the defendant was named as "John Doe" at the outset of the litigation).

***

Accordingly, the joinder of Malcolm and Willis in this action with the filing of the Third Amended Complaint satisfies the requirements of Rule 20, and the Court will not exercise its discretion to deny such joinder because Baez did not delay in seeking to join them, joinder will not prejudice Honda, and denying joinder creates the risk of multiple litigation in state and federal court. Furthermore, the record reveals that Baez did not seek to join Malcolm and Willis

in this action simply to destroy diversity, and therefore there is no evidence of improper motivation behind the request for joinder.

As a result, after the joinder of Malcolm and Willis in this action with the filing of the Third Amended Complaint, complete diversity of the parties is lacking. Baez, Malcolm and Willis are all New York citizens, and therefore this Court lacks jurisdiction under 28 U.S.C. § 1332(a). Accordingly, the Court must remand this action to the Suffolk County Supreme Court pursuant to Section 1447(c) and Section 1447(e).

**CONCLUSION**

For the reasons set forth above, Baez's motion to remand this action is GRANTED. Accordingly, this action is remanded to the court from which it was removed for lack of jurisdiction under 28 U.S.C. § 1447(c), (e). The Clerk of Court is respectfully directed to mail a copy of this order to the Suffolk County Supreme Court and close this case.

Dated: Central Islip, New York
September 28, 2026

*/s Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge